```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| EDWIN JACQUET, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | |
| v. | Civil Action<br>No. 16-4368 (JBS) |
| WARDEN DAVID ORTIZ, | **OPINION** |
| Respondent. | |

APPEARANCES:

MICHAEL N. PEDICINI, Esq.
560 Main Street
Chatham, New Jersey 07928

EDWIN A. PALTZIK, Esq.
Joshpe Law Group LLP
79 Madison Avenue, FL 2
New York, New York 10016
    Attorneys for Petitioner Edwin Jacquet

KRISTIN LYNN VASSALLO, Esq.
Office of the U.S. Attorney
970 Broad Street
Newark, New Jersey 07102
    Attorney for Respondent David Ortiz

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

This matter comes before the Court on Edwin Jacquet's ("Petitioner") petition for writ of habeas corpus challenging a disciplinary proceeding. Petition, Docket Entry 1. Respondent David Ortiz opposes the petition. Answer, Docket Entry 10. The petition is being decided on the papers pursuant to Fed. R. Civ.

Pro. 78(b). For the reasons set forth below, the petition is denied.

## II. BACKGROUND

In March 2012, Petitioner pled guilty in the Southern District of New York to conspiracy to commit bank fraud, 18 U.S.C. § 1349. Petition ¶ 10. He was sentenced to a 63-month term of imprisonment. *Id.* Petitioner entered the BOP's Residential Drug Abuse Program ("RDAP") while incarcerated at FCI Miami. *Id.* ¶ 12. After completing the RDAP residential component, he was transferred to the Bronx Community Re-Entry Center ("BCRC") on September 1, 2015. Declaration of Tara Moran ("Moran Dec.") Exhibit 3.

According to Petitioner, his mother and sister visited him at his work site on October 5, 2015. Petition ¶ 21. During the visit, Petitioner consumed six Nature Valley Lemon Poppy Seed Breakfast Biscuits. *Id.*; Petitioner's Exhibit C. "When he returned to BCRC that evening, [Petitioner] realized that his consumption of the biscuits could trigger a positive urinalysis result for opiates if a random urine test was conducted. Therefore, he voluntarily informed BCRC staff member Rohan of the situation. Rohan assured [Petitioner] that this would not be a problem." Petition ¶ 23. A urine test was conducted that evening at approximately 10:30 p.m. *Id.* ¶ 25.

According to the incident report, BCRC staff received a fax from LabCorp on October 13, 2015 indicating that Petitioner's sample was positive for codeine and morphine. Incident Report, Moran Dec. Exhibit 4 § 11. The report indicated the sample had a codeine level of 500 ng/mL and a morphine level of 317 ng/mL. LabCorp Report, Petitioner's Exhibit D. A staff member created an incident report, and Petitioner received a copy on October 13, 2015 at 1:59 p.m. Incident Report §§ 12-16; Petition ¶ 28. He was informed of his right to remain silent, and according to the report, made the following statements:

> Resident stated that "he does not use drugs, has not used Morphine or Codeine ever in his life." "[T]he only this I can think of is the granola bar that I consumed that day (10/5/2015) which had lemon poppy seeds." Resident states that he showed Monitor II Rohan the wrapper of said granola bar before the Urinalysis was conducted. Resident further states that he is willing to submit to another urinalysis test or blood exam if needed, or anything to prove he is not taking any drugs.

*Id.* §§ 23-24. Petitioner was charged with violating Code 112,[1] Incident Report, and the report was referred to the Center Discipline Committee ("CDC") for a hearing. *Id.* §§ 10, 27. Petitioner also received and signed a Notice of CDC Hearing, Moran Dec. Exhibit 5; an Inmate Rights form, Moran Dec. Exhibit 6; and waiver of 24-hour notice form, Moran Dec. Exhibit 7. The Notice of CDC Hearing indicated the hearing would occur on

---

[1] *See* 28 C.F.R. § 541.3.

October 14, 2015 at 2:58 p.m.[2] Petitioner waived his right to a staff representative and requested that Mr. Rohan appear as a witness on his behalf in order to testify about the granola bar. Notice of CDC Hearing.

The disciplinary hearing took place on October 14, 2015 at MDC Brooklyn.[3] Petitioner's mother submitted a written statement indicating she gave Petitioner the biscuits and that neither of them knew "the biscuits contained poppy seeds." CDC Report, Moran Dec. Exhibit 8 at 9. Mr. Rohan submitted a statement stating:

> On October 5, 2015 prior to conducting Resident Jacquet, Edwin Reg. #69422-053 random urinalysis he showed me a wrapper and said "look I have this wrapper." I, MII Rohan asked him what he was showing me and he stated "a candy wrapper, it had poppy seeds in it." I informed Resident Jacquet, Edwin Reg. #69422-053 that he still had to take the urine and he complied.

*Id.* at 7. In addition to these statements, the Committee considered the Incident Report, Chain of Custody form, the Community Based Agreement, and LabCorp report. *Id.* § III.D. After reviewing the witness statements and documentary evidence, the CDC determined Petitioner violated Code 112. It recommended

---

[2] The date appears to have been originally written as "10/15/15," which was later written over to be "10/14/15." A pair of initials belonging to an unidentified person appears next to the correction. Notice of CDC Hearing.

[3] Petitioner alleges this hearing occurred without his presence. Petition ¶ 33.

4

that Petitioner be returned to a more secure facility and that he lose all available good conduct time in order to deter him and other inmates. *Id.* §§ VI-VII. Upon review of the CDC's findings, the Disciplinary Hearing Officer ("DHO") upheld the determination and sanctioned Petitioner to loss of 40-days good-conduct time and 45-days of non-vested good-conduct time. *Id.* § X; DHO Checklist, Moran Dec. Exhibit 9.

While awaiting the final report, Petitioner attempted to arrange for a hair follicle test that would purportedly show that the urine test had been a false positive due to the poppy seeds. Petition ¶ 46. He filed an inmate request to staff form on November 9, 2015 requesting a hair test on an expedited basis as "[h]air analysis is accurate for up to 60 days from date in question, which is October 5, 2015." Petitioner's Exhibit J. He indicated that he or his family would reimburse the BOP for the test. *Id.* His mother purchased a hair testing kit and mailed it to the BOP, but a case manager denied the request for testing. Petition ¶¶ 47-48.

Petitioner submitted a regional administrative remedy appeal on December 4, 2015, arguing that he ate six lemon poppy seed biscuits "before I realized they had poppy seeds in them." Petitioner's Exhibit L at 1. He stated that he had learned "that hair analysis was the best, most accurate method of testing for heroin usage and would eliminate the false positive of poppy

5

seed ingestion, a common problem[,]" and objected to the case manager's denial of his request for a hair test at his expense. *Id.* at 2. He requested that a hair test be performed by January 3, 2016. *Id.* His administrative appeal was rejected on December 16, 2015 for being illegible and untimely; the BOP stated his appeal was due by November 24, 2015 and was not received until December 8, 2015. Petitioner's Exhibit M. Petitioner was instructed to resubmit his appeal along with "staff verification stating reason untimely filing was not [his] fault" within 10 days. *Id.* Petitioner attempted to submit his appeal two more times, and each time his appeal was rejected by the regional office as untimely.[4] Moran Dec. ¶¶ 5-6. He appealed to the Central Office on March 7, 2016, and the appeal was rejected on March 21, 2016. Moran Dec. Exhibit 2 at 5.

Petitioner thereafter filed this habeas petition on July 19, 2016. Petitioner originally named several persons besides Fort Dix Warden Ortiz as Respondents. In ordering the United States to answer the petition, the Court dismissed the other persons as the only proper respondent in a habeas proceeding is Petitioner's immediate custodian. *See Rumsfeld v. Padilla*, 542

---

[4] Petitioner argues the BOP miscalculated the original deadline for submitting the appeal, Petition ¶ 52, and the delays in the resubmissions were caused by the early departure of Fort Dix's staff for the holidays as well as their failure to provide a staff memo explaining the situation, *id.* ¶ 57-61; Petitioner's Exhibit Q.

6

U.S. 426, 435-36 (2004). Petitioner filed a motion to expedite the proceedings, asserting that he had been eligible for release on August 29, 2016 prior to the revocation of his good conduct credits. Motion to Expedite, Docket Entry 7. The Court granted the motion and directed Respondent to answer on an expedited basis.[5] Respondent filed its answer on August 17, 2016. Petitioner submitted a response on August 19, 2016. Response, Docket Entry 11.

### III. ANALYSIS

Petitioner argues he was denied due process of law in the course of his disciplinary hearing and administrative appeal. He challenges the result of the hearing, sanctions of the loss of his good-conduct credits, and expulsion from the RDAP program.

### A. Due Process

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct. When such a statutorily created right exists, a prisoner has a constitutionally protected liberty interest in good time credit." *Denny v. Schultz*, 708 F.3d 140, 143-44 (3d Cir. 2013) (internal citations and

---

[5] In spite of the fact that the short time period before August 29, 2016 was a self-created "emergency" attributable to the four-month delay between the denial of the Central Office appeal in March and the filing of this petition in late July, the Court granted the motion in the interests of justice.

quotation marks omitted). "Due process protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake." *McGee v. Schism*, 463 F. App'x 61, 63 (3d Cir. 2013) (per curiam). In assessing whether disciplinary proceedings complied with the Due Process Clause, the Court considers the factors enumerated by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Moreover, the "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (quoting *Wolff*, 418 U.S. at 558).

   *1. Wolff Factors*

   Under *Wolff*, inmates must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Id.* at 454 (citing *Wolff*, 418 U.S. at 563-67). A review of the record indicates Petitioner received all of the due process protections to which he was entitled under *Wolff*.

   Petitioner admits he had a discussion with staff member Villanueva on October 13, 2015 at approximately 2:00 p.m.

8

Petition ¶ 28; Incident Report ¶¶ 15-16. The record reflects that at that date and time, he received advanced written notice of being charged with violating Code 112 and that the hearing would be scheduled for October 14, 2015 at 2:58 p.m. Notice of CDC Hearing. Petitioner concedes the form "appears" to have been signed by him, but he argues the form is "confusing" as the date appears to have been changed from October 15, 2015 to October 14, 2015, and that he did not understand what he was signing. Response ¶ 5. He does not, however, assert the date was written in or changed after he signed the document, and his assertion that he did not understand the documents is patently contradicted by the fact that he signed the acknowledgment of rights which states that his rights were explained to him. *Id.* ¶ 6; Inmate Rights Form.

The record also contradicts his unsupported assertion that he was not present at the hearing. In the "Presentation of Evidence" section of the CDC Report, Petitioner initialed next to the portion indicating he had been advised of his rights to present a statement or remain silent, and to present evidence on his behalf. CDC Report § III.A. He denied the charges. *Id.* He also initialed next to the "Summary of Inmate Statement" portion, which stated "Resident Jacquet stated he consumed a lemon poppy seed granola bar and believes this caused his positive result." *Id.* § III.B. He also initialed next to the

9

portion indicating the hearing took place on "10/14/2015" at 2:58 p.m.[6] *Id.* § I.B. Once again, although the same change in date was made on this form as on the Notice of CDC Hearing, Petitioner does not allege this change was made after he initialed the form. Both parties submitted identical copies of the CDC Report, strongly indicating that the correction was made prior to Petitioner's review and approval of the form. *Compare* Petitioner's Exhibit E, *with* Moran Dec. Exhibit 8. A typo in the "Hearing Date" section and the lack of a specific statement that he was present do not support his assertion that the hearing was held in his absence, whereas the report bearing Petitioner's initials and signature next to the summary of the evidence presented at the hearing constitutes evidence that he was present. *See Muhammad v. Wiley*, 330 F. App'x 165, 168 (10th Cir. 2009) (holding disciplinary report indicating prisoner had no comment is "some evidence he attended the hearing"). Considering the record as a whole, including the fact that Petitioner did not argue in any of his administrative appeals that he was not present for the hearing, there is no factual support for Petitioner's allegation. Even if, contrary to the evidence of his attendance at the hearing, one assumes arguendo that

---

[6] Petitioner asserts the time reads 2:08 p.m., Response ¶ 7, but the printout of his chronological disciplinary record provided by Petitioner indicates it was in fact 2:58 p.m. *See* Petitioner's Exhibit G.

Petitioner was not present, the error would be harmless, as now discussed.[7]

Petitioner argues that "[t]he outcome may well have been different had Mr. Jacquet been permitted to be present and speak before the CDC, at which time the CDC would have been able to assess his credibility and hear his explanation of events." Response ¶ 12. However, the CDC was already aware of Petitioner's explanation of events. It had before it the Incident Report containing Petitioner's statement that he consumed a lemon poppy seed granola bar and that he promptly informed Mr. Rohan of the consumption on October 5, 2015, Incident Report § 24, as well as Mr. Rohan's statement that Petitioner produced the wrapper on that date prior to providing

---

[7] *See Brennan v. United States*, No. 16-3016, 2016 WL 2732082 (10th Cir. May 11, 2016) (holding failure to provide 24-hour notice subject to harmless error review); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007) ("[E]rrors made by prison officials in denying witness testimony at official hearings are subject to harmless error review."); *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992) (noting that harmless error analysis applies to cases concerning prison disciplinary proceedings); *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) ("If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation." (internal citations omitted)); *Lane v. Maye*, No. 16-3094, 2016 WL 4430672, at *7 (D. Kan. Aug. 22, 2016) ("The court finds that even if petitioner proved that he was not taken out of his cell to appear near the officer's station in the SHU for his DHO hearing, this error was harmless.").

11

the urine sample, CDC Report at 7. The committee also had Petitioner's mother's statement wherein she indicated she gave Petitioner the biscuits. *Id.* at 9. The committee was also aware "that ingestion of poppy seed products may result in positive test results for unauthorized drug use," which was why residents were explicitly prohibited from consuming them. *Id.* at 5. The committee had all of this information and did not credit Petitioner's version of events. Petitioner does not indicate what other explanation he would have provided that may have impacted the hearing. *See* Response ¶ 12. Thus, even if the BOP conducted the hearing in Petitioner's absence, Petitioner has not established he was prejudiced by the error.

Petitioner further alleges his rights under *Wolff* were violated when he was denied the opportunity to take a hair follicle test and present that as evidence of the false positive. "The procedural safeguards of *Wolff* do not guarantee a prisoner the right to present any evidence he wishes. Additionally, with specific respect to second, independent lab tests, courts have held that prisoners do not have a due process right to engage in secondary testing." *Abbott v. Hollingsworth*, No. 14-6784, 2015 WL 1952355, at *4 (D.N.J. Apr. 29, 2015) (citing *Manfredi v. United States*, No. 12-1905, 2012 WL 5880343 at *6 (D.N.J. Nov. 20, 2012)); *see also Garrett v. Smith*, 180 F. App'x 379, 381 (3d Cir. 2006) (finding no right to expert

12

testimony in disciplinary proceedings); *Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir. 1986) (noting that requiring confirmatory testing in order to challenge the reliability of drug tests "would seriously interfere with the institutional goal of drug deterrence and prompt resolution of drug related infractions"). The BOP did not violate Petitioner's due process rights by not conducting a hair follicle test.

    Finally, Petitioner received a copy of the CDC Report and DHO Checklist setting forth the reasons for the revocation of his credits. Petitioner's Exhibits E and I; *see also* DHO Checklist. The Court therefore finds that the disciplinary proceedings complied with the standard set forth in *Wolff*. The Court must now determine whether there exists "some evidence" in the record to support the decision.

    *2. Some Evidence*

    At its core, the petition is a challenge to the sufficiency of the evidence used to sanction Petitioner. He asserts the failure to inform LabCorp of the ingestion of poppy seeds resulted in a "scientifically unsound lab report"; that 300ng/ml is insufficient to form the basis of a positive result as it is inconsistent with other federal standards; and that the CDC failed to adequately consider the possibility that the result was a false-positive due to the ingestion of poppy seeds. Petition ¶¶ 97-110.

13

In reviewing a disciplinary proceeding, the Court's function is not to decide whether it would have reached the same decision, but to consider "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added). This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" *McCarthy v. Warden Lewisburg USP*, 631 F. App'x 84, 86-87 (3d Cir. 2015) (quoting *Hill*, 472 U.S. at 455).

Here, the CDC based its decision in part on the incident report. The CDC relied on the positive urinalysis result from a sample provided by Petitioner and the absence of medications that would cause a positive test. Incident Report § 11; CDC Report § V. "Positive urinalysis results based on samples that officials claim to be [the inmate's] constitute *some* evidence of [the inmate's] drug use." *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989) (emphasis in original). The incident report also contains Petitioner's admission that he consumed poppy seeds,

14

which was explicitly prohibited by the terms of his agreement with the BCRC. CDC Report at 5.[8]

Having reviewed the findings of the CDC, the Court concludes that there is some evidence in the record to support those conclusions. *See* Perez v. McKean, 136 F. App'x 542, 544 (3d Cir. 2005) ("[A]lthough some evidence supported the claim that the urine test gave a false positive result, some evidence supported the conclusion reached in the disciplinary proceeding, which is all that is required."). The Court must therefore uphold the disciplinary decision. *Cardona v. Lewisburg*, 551 F. App'x 633, 637 (3d Cir. 2014) ("Once the reviewing court determines that there is some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected.").

*3. Sanctions*

Petitioner also challenges the severity of the sanctions imposed. Prohibited acts are categorized according to the severity of the conduct. Code Level 100s are deemed "Greatest Severity Level Prohibited Acts." 28 C.F.R. § 541.3. The loss of 40-day good-conduct time and 45-days non-vested good-conduct

---

[8] Petitioner's claims that he was unaware the lemon poppy seed biscuits contained poppy seeds are dubious at best as the Court notes the packaging prominently states the type of biscuits and that the seeds are visible on the depiction of the biscuits themselves. *See* Petitioner's Exhibit C; CDC Report at 10.

time is within the permitted sanctions for a Code 112 violation. 28 C.F.R. § 541.4(b)(1). There is no basis to overturn the imposed sanctions.

**B. Expulsion from RDAP**

Petitioner also challenges his removal from RDAP as arbitrary and excessive.[9] Petition ¶¶ 123-27. Prisoners have no constitutional right to be assigned to a particular institution, facility, or rehabilitative program. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224–26 (1976); *Wilkerson v. Samuels*, 524 F. App'x 776, 778 (3d Cir. 2013) (per curiam); *Magnin v. Beeler*, 110 F. Supp. 2d 338, 340 n.2 (D.N.J. 2000). Under the federal regulation that was in effect at the time of the hearing, 28 C.F.R. § 550.53(g)(3),[10] expulsion from RDAP was mandatory once Petitioner was found to have violated the program's rules. *See also Douvos v. Quintana*, 382 F. App'x 119, 122 (3d Cir. 2009) ("[E]xpulsion from a rehabilitative program for a violation of its rules and regulations 'falls within the expected perimeters of the sentence imposed by a court of law.'" (quoting *Sandin v. Conner*,

---

[9] To the extent Petitioner asserts he was removed from RDAP prior to the DHO's review of the CDC's findings, the documents submitted do not support that assertion. See Petition ¶ 38; Petitioner's Exhibit F.

[10] The regulation was amended to remove this subsection effective May 26, 2016. Drug Abuse Treatment Program, 81 Fed. Reg. 24484-02 (Apr. 26, 2016) (to be codified at 28 C.F.R. pt. 550).

16

515 U.S. 472, 485 (1995))). The BOP's decision to remove Petitioner from RDAP did not violate his due process rights.

**C. Appellate Rights**

Petitioner also asserts the BOP violated his right to a fair and adequate appeals process. Petition ¶¶ 117-22. He also asserts a claim under the Administrative Procedure Act. *Id.* ¶¶ 128-30. Neither of these claims warrant habeas relief.

Petitioner cannot challenge the BOP's alleged interference in his administrative appeal under the APA. Generally, "[u]nder the APA, any 'person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review.'" *Smriko v. Ashcroft*, 387 F.3d 279, 290 (3d Cir. 2004) (quoting 5 U.S.C. § 702) "The only exceptions to this general rule are situations in which '(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Id.* at 290-91 (quoting 5 U.S.C. § 701(a)).

"The APA does 'not apply to the making of any determination, decision, or order under [the] subchapter' governing imprisonment." *Anderson v. Fed. Bureau of Prisons*, 506 F. Supp. 2d 28, 29–30 (D.D.C. 2007) (quoting 18 U.S.C. § 3625) (holding APA may not be used to challenge removal from work program). The provision governing RDAP placements, 18 U.S.C. § 3621(e)(1), is included in the subchapter that is exempted from

17

judicial review under the APA. *See* Jordan v. Wiley, 411 F. App'x 201, 214 (10th Cir. 2011) ("Because the APA does not apply to substantive BOP disciplinary determinations involving the reduction of good-time credits, we may not review [petitioner's] claim . . . that the BOP acted in a way that was arbitrary, capricious, abused its discretion, or was otherwise not in accordance with the law."); *see also Bernard v. Roal*, 716 F. Supp. 2d 354, 360-61 (S.D.N.Y. 2010). The APA claim is therefore meritless.

Finally, Petitioner cannot establish a violation of the Due Process Clause in his appeals process as there is no constitutional right to prison grievance procedures. *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007).

## IV. CONCLUSION

For the above stated reasons, the petition is denied. An accompanying Order will be entered.

 **September 14, 2016**             **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge